**IN THE UNITED STATES DISTRICT COURT**
**OF THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**VICTORIA J. CARTER**                                         **PLAINTIFF**

**VS.**                          **Civil Action No.: 5:24-cv-56-DCB-LGI**

**CITY OF MCCOMB, MISSISSIPPI; and**
**JUAN CLOY, In His Individual Capacity**
**for State Law Violations**                                   **DEFENDANTS**

<u>**ORDER AND OPINION ON MOTION FOR SUMMARY JUDGMENT**</u>

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants City of McComb and former Police Chief Juan Cloy ("Cloy") (collectively "Defendants"). [ECF No. 49]. For the reasons set forth below, the Court DENIES in part Defendants' motion with respect to the retaliation and intentional interference with business relationships claims, and the Court GRANTS summary judgment with respect to the wage discrimination claim.

## I.    BACKGROUND

Victoria J. Carter ("Carter" or "Plaintiff Carter") is an African American female who was formerly employed by the McComb, Mississippi Police Department. [ECF No. 52-1] at 14; [ECF No. 13] at 1. Carter began her career at the McComb Police Department in 2009 as a "patrolman". <u>Id.</u> at 15. Around 2015, Carter shifted to "[e]vidence [c]ustodian", then to "[j]uvenile [d]etective". <u>Id.</u> at

15-17. Carter applied for the evidence custodian position, was interviewed, and once she accepted the position, she received an increase in pay. Id. at 19. She believes that she was also interviewed for the juvenile detective position but cannot confirm whether she received an increase in pay. Id. at 23. Later, around 2019, she was promoted to "regular [d]etective", and ultimately to "Chief Investigator." Id. 15-17. Carter received a raise as Chief Investigator, and she worked in that position from 2019 to August 18, 2023 – the date that she was terminated from the McComb Police Department. Id. at 34; [ECF No. 53] at 3.

During the time of her employment with the McComb Police Department as Chief Investigator, she "check[ed] two boxes... as a first for the City of McComb" – Carter was the first African American Chief Investigator and the first female Chief Investigator. [ECF No. 52-1] at 29. She originally reported to Chief of Police Damian Gatlin, then Garland Ward. Id. at 38. During both Gatlin and Ward's time as Police Chief, Plaintiff Carter worked collaboratively with them to hire new investigators. Id. at 37. After Chief Ward left the McComb Police Department, Carter answered to Delre Smith, who was interim chief for a short period until Juan Cloy ("Cloy" or "Defendant Cloy") was hired. Id. at 42. Prior to Cloy's employment with the McComb Police Department, Plaintiff Carter was never issued a negative or unsatisfactory

performance review and former Police Chief Ward and Smith both approved raises for Carter. Id. at 42, 52.

Defendant Cloy, an African American male, became Police Chief of the McComb Police Department on June 1, 2023. [ECF No. 52-2] at 7. As of the date of his deposition, March 28, 2025, Cloy was still the Chief of Police in McComb. Id. When he started working in McComb, he and Plaintiff Carter had little contact with one another, but he "did make a mental note" that she was "just kind of apprehensive to warm up". Id. at 12.

Shortly after beginning his employment as Chief, Defendant Cloy learned online that Carter was "being sued by a murder suspect" for "something to do with falsifying information". Id. at 14-15.[1]

After discussing Carter's alleged actions with the district attorney, Defendant Cloy wrote and signed an "intent to impose disciplinary action letter" ("disciplinary letter") to Carter. Id. at 13-15. Cloy maintains that he interviewed individuals concerning the specific instances that resulted in Plaintiff Carter receiving the disciplinary letter; however, Carter maintains that neither Cloy, nor the City of McComb has "ever

---

[1] Cloy's deposition continues in further detail regarding the falsified affidavit that Carter allegedly "copied and pasted" from a different police officer and signed off as her own. [ECF No. 52-2] at 15-18. The lawsuit Cloy refers to in the deposition is Frazier v. Carter, No. 5:21-cv-00007-DCB-ASH. [ECF No. 53] at 4.

produced any such [documents] to substantiate these claims." Id. at 31; [ECF No. 53] at 4. Included in the disciplinary letter are allegations of "incompetency", "inefficiency", "flouting the authority of a superior by displaying obvious disrespect", "insubordinate, rebellious, disruptive, harassment, or disrespectful behavior toward other employees or government officials", and "disgraceful conduct that adversely affects the City of McComb City's legitimate interests". Id. at 20-21; [ECF No. 52-5] at 1.

In support of his accusations in the disciplinary letter, Defendant Cloy cites to specific examples of Carter's conduct. These include the incident involving the falsified affidavit; Carter allegedly "turn[ing] and fac[ing] the wall and star[ing] at the wall when [Cloy] was speaking to her"; Carter allegedly not using the appropriate avenue to submit an "accident report"; and her alleged comment to another Police Department member that Defendant Cloy looked at the "office manager in a certain way as if it was, you know, a sexual thing". [ECF No. 52-2] at 15-18, 22-24. The disciplinary letter, which is dated August 11, 2023, was signed by Cloy just a little over two months after he began working at McComb Police Department. Id. at 26. Plaintiff Carter was ordered to appear for a hearing on the merits of the disciplinary letter on August 18, 2023, or risk unpaid leave or termination. [ECF No. 52-5] at 1.

After the hearing on August 18, 2023, Carter was provided a termination letter. [ECF 52-2] at 35. Defendant Cloy does not remember if the decision for Carter's termination was made prior to her receiving the disciplinary letter or after the hearing. Id. at 36. Plaintiff Carter filed suit against the City of McComb on June 7, 2024, for employment related claims of discrimination and retaliation under "Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, in violation of the Fourteenth Amendment to the United States Constitution, in violation of the Equal Pay Act of 1963, and in violation of 42 U.S.C. § 1981". [ECF No. 1] at 3-4. Plaintiff Carter amended her original complaint on October 2, 2024, to include her original employment related claims of discrimination and retaliation and an additional state law claim of intentional interference of business relationships against Cloy (in his individual capacity). [ECF No. 13] at 4-6.

Specifically, Plaintiff Carter alleges that she was terminated because she complained of gender and wage discrimination on June 12, 2023, in an Equal Employment Opportunity Commission ("EEOC") charge. [ECF No. 15-1]. In addition to her federal claims, Plaintiff Carter includes a state law claim of intentional interference of business relationships against Defendant Cloy for "persuad[ing] the City of Hattiesburg police

chief and the City of Brookhaven police chief not to hire [her]."
[ECF No. 13] at 4-5.

Defendants filed a motion for summary judgment on July 14,
2025, in which they allege that Carter cannot prove a *prima facie*
case for her claims. [ECF No. 51] at 1.

## II. LEGAL STANDARD

Summary judgment is available in employment discrimination
cases, see, e.g., Slaughter v. Allstate Ins. Co., 803 F.2d 857,
861 (5th Cir. 1986), and is appropriate where "critical evidence
is so weak or tenuous on an essential fact that it could not
support a judgment in favor of the nonmovant, or where it is so
overwhelming that it mandates judgment in favor of the movant."
Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).

In a motion for summary judgment, the movant must show that
"there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).
An issue of material fact is genuine if a reasonable jury could
return a verdict for the non-movant. Anderson v. Liberty Lobby,
477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or
unnecessary will not be counted." Id. A party cannot defeat a
properly supported summary judgment motion by directing the Court
to conclusory allegations or presenting only a scintilla of
evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

Instead, the non-movant must "identify specific evidence in the record and... articulate the precise manner in which that evidence supports his or her claim." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

The evidence must be viewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary judgment stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. ANALYSIS

#### A. The Wage Discrimination Claim

Originally, Carter was pursuing a wage-based discrimination claim under "Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, in violation of the Fourteenth Amendment to the United States Constitution, in violation of the Equal Pay Act of 1963, and in violation of 42 U.S.C. § 1981." [ECF No. 13] at 4. However, considering the discovery record and the

parties' representations, Plaintiff Carter has abandoned this claim. [ECF No. 53] at 7; [ECF No. 55] at 1. Therefore, the Court will dismiss Plaintiff Carter's wage discrimination claim with prejudice.

### B. The Retaliatory Discharge Claim

Title VII prohibits retaliation in either of two instances: (1) where the employee has opposed any unlawful employment practice ("opposition clause"); or (2) where the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" ("participation clause"). 42 U.S.C. 2000e-3(a). Because Plaintiff Carter filed an "internal, written grievance regarding discriminatory treatment in the workplace" and "filed a charge of discrimination with the [EEOC]", her allegations fall under both clauses. [ECF No. 53] at 2-3. Aldridge v. Tougaloo College, 847 F.Supp. 480, 483 (S.D.Miss. 1994).

To present a *prima facie* case under a retaliation claim, a plaintiff must establish "(1) that there was statutorily protected participation [in EEOC activity], (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." Whatley v. Metropolitan Atlanta Rapid Transit, 632 F.2d 1325, 1328 (5th Cir.

1980). Each of the three (3) elements needed to establish the *prima facie* case will be addressed in turn.

(1)  Statutorily Protected Participation

For Plaintiff Carter to prove that she engaged in statutorily protected expression, she must first show that her grievance "was in opposition to conduct by the [McComb Police Department] that was an unlawful employment practice under Title VII or conduct that she reasonably believed was unlawful under that statute." Aldridge, 847 F. Supp. 480, 484 (S.D. Miss. 1994).

This element is satisfied. Plaintiff Carter filed an EEOC charge on June 12, 2023, which alleged that the McComb Police Department discriminated against her on the basis of her sex (Female) and race (African American). [ECF No. 15-1]. Specifically, she alleged that her "title of chief investigator was removed" and because of her "race (black) and gender (female), [that she] was not allowed to function as chief investigator." Id. She further states that "Captain Steve Powell (white male) ... counteracts any of [her] orders." Id. The Court finds that because Plaintiff Carter filed an EEOC charge, which is a protected activity, and alleged that she was discriminated against based on her sex and race, that the first element of this inquiry is satisfied.

(2)  An Adverse Employment Action

It is undisputed that Plaintiff Carter was terminated from her position of Chief Investigator at the McComb Police Department on August 18, 2023. [ECF No. 53] at 3, 8. As such, the Court finds that this element of the inquiry is satisfied.

(3)  Causal Link Between the Participation and the Adverse Employment Action

The Fifth Circuit has continuously held that "in order to establish the causation prong of a relation claim, the employee should demonstrate that the employer knew about the employee's protected activity." Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 883 (5th Cir. 2003). "Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation." Mooney v. Lafayette Cty. Sch. Dist., 538 F. App'x 447, 454 (5th Cir. 2013). This prong may "also be satisfied when the plaintiff relies upon a chronology of events from which retaliation may plausibly be inferred." Id.; Brady v. Hous. Indep. Sch. Dist., 113 F.3d 1419, 1424 (5th Cir. 1997).

Carter has presented such chronology. Prior to Cloy's employment with the McComb Police Department, Plaintiff Carter was never issued a negative or unsatisfactory performance review. [ECF No. 52-1] at 42, 52. To the contrary, her former Police Chiefs Ward and Smith, who worked alongside her and evaluated her

performance, approved raises on her behalf. Id. Yet, shortly after
Cloy assumed office, and just two days after the City of McComb
was notified of Carter's EEOC charge, Cloy began to question
Carter's performance.

 Defendant Cloy states that he was unaware of any allegations
that Carter made regarding discrimination that she experienced
during her employment of the McComb Police Department prior to her
termination. [ECF 52-2] at 39-40. A jury may find Defendant Cloy's
claim to "lack credibility" as "Cloy is not a disinterested
witness." See Sartor v. Ark. Nat. Gas Corp., 321 U.S. 620, 628,
(1944) (citing Sonnentheil v. Christian Moerlein Brewing Co., 172
U.S. 401, 408 (1899) "...the mere fact that the witness is
interested in the result of the suit is deemed sufficient to
require the credibility of his testimony to be submitted to the
jury as a question of fact.").

This sudden shift – from years of positive evaluations and
salary increases to immediate scrutiny and alleged employment
concerns – strongly reinforces the close temporal proximity
between the filing of the charge and the adverse employment action.
Given this timing, the Court finds that retaliation may be
plausibly inferred.

Further, when there is contradictory testimony regarding a
material fact, "[i]t is the jury, not the court, which is the fact-

finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Miller v. Borden, Inc., 664 F.2d 543, 546 (5th Cir. 1981)(Citing Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29 (1944)). Therefore, the determination of whether Carter's termination was motivated by her protected activity are questions best reserved for the jury.

Accordingly, the Court finds that the causation element is satisfied, and Plaintiff Carter has established a *prima facie* case of retaliation, leaving the ultimate question of Cloy's motive for termination to the jury.

(4) Legitimate, Nondiscriminatory Business Reason for its Action

Once a *prima facie* case is established, the employer bears the burden of articulating a legitimate, nondiscriminatory business reason for its action, which the plaintiff has the burden of proving is pretextual. See De Anda v. St. Joseph Hospital, 671 F.2d 850, 856 (5th Cir. 1982); E.E.O.C. v. MCI Telecommunications Corp., 820 F.Supp. 300, 309 (S.D.Tex. 1993).

To articulate a legitimate, nondiscriminatory business reason for its action, Cloy cites several grounds to justify Carter's

termination. These include the incident involving the falsified affidavit; Carter allegedly "turn[ing] and fac[ing] the wall and star[ing] at the wall when [Cloy] was speaking to her"; Carter allegedly not using the appropriate avenue to submit an "accident report"; and her alleged comment to another Police Department member that Defendant Cloy looked at the "office manager in a certain way as if it was, you know, a sexual thing". [ECF No. 52-2] at 15-18, 22-24; De Anda v. St. Joseph Hospital, 671 F.2d 850, 856 (5th Cir. 1982).

However, Defendant Cloy has "submitted no documentation of any wrongdoing by Carter in relation to th[ese] claim[s]." [ECF No. 53] at 4. Moreover, Cloy himself testified that when he assumed his position with the McComb Police Department, "all police department employees were on a clean slate." [ECF No. 52-10] at 6.

Further undermining Cloy's justifications for terminating Carter is the testimony of Delre Smith, former Chief of McComb who worked directly alongside Carter. Smith described Carter as the "centerpiece of that office even when she was just a detective." [ECF No. 52-3] at 64. Smith testified that "people trusted Chief Carter across the board", "people respected her", and that if someone came into the police station looking to give information in a case that "she was the person that they wanted to give information [to]". Id. at 65. He further testified that no one,

including Cloy, ever approached him for input regarding Carter's performance prior to her termination. Id. at 67.

Given the absence of documentary support, the inconsistency between Cloy's testimony and his asserted reliance on prior alleged misconduct despite instituting a "clean slate," and the credibility of Smith's testimony regarding Carter's professionalism and reputation, the Court finds that a reasonable jury could reject Defendant's proffered reasons as pretextual. Ultimately, whether Cloy's stated reasons were genuine or merely a cover for retaliation is a question of fact that must be resolved by the jury.

For the reasons set forth above, summary judgment is denied with respect to Carter's Title VII retaliation claim.

### C. The State Claim of Intentional Interference with Business Relations

To establish a *prima facie* case of intentional interference with business relations, Mississippi law requires:

(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which

constitutes malice); (4) that actual damage and loss resulted.

AmSouth Bank v. Gupta*,* 838 So. 2d 205, 214 (Miss. 2002) (citation omitted).

To prove her *prima facie* case of damages, "the plaintiff must show (1) a loss, and (2) that defendant's conduct caused the loss." Cenac v. Murry*,* 609 So. 2d 1257, 1271 (Miss. 1992). Each of the four (4) elements to establish the *prima facie* case are satisfied. [2]

(1) Intentional and Willful Act

Plaintiff Carter presents to the Court that she was made aware that Defendant Cloy had contacted the "Hattiesburg Police Chief, the Brookhaven Police Chief, and the Brookhaven Mayor" regarding Carter's "potential employment" following her termination with the McComb Police Department. [ECF No. 53] at 15; [ECF No. 52-10] at

---

[2] The Court notes, for the sake of thoroughness, that this claim for tortious interference is not barred by the Mississippi Torts Claims Act (MTCA). While "[t]he MTCA provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit," "not all claims against a governmental entity and their employees are covered by the MTCA." Stewart ex rel. Womack v. City of Jackson, 804 So.2d 1041, 1046 (Miss. 2002); Univ. of Miss. Med. Ctr. v. Oliver, 235 So. 3d 75, 81 (Miss. 2017). Torts in which malice is an essential element do not fall under the MTCA. Miss. Code Ann. § 11-46-5(2). Proof of malice is an essential element for tortious interference claims. See Springer v. Ausbern Constr. Co., 231 So. 3d 980, 989 (Miss. 2017); AmSouth Bank v. Gupta, 838 So. 2d 205, 214 (Miss. 2002). Therefore, Carter's tortious inference claim may proceed against Defendant Cloy individually.

7. Carter maintains that she was denied from these jobs following her termination from the McComb Police Department because Cloy had told them "[that she] wasn't a good fit." [ECF No. 52-1] at 55. When Cloy was asked to describe conversations he had with individuals regarding Carter's potential employment, he testified:

> "...after Defendant was made aware of Plaintiff's lawsuit against him, he called Hattiesburg Police Chief Hardy Sims and told him that he, Sims, may be a witness in this lawsuit. The two did not discuss Plaintiff's potential employment. Also after learning of this lawsuit, Defendant called Chief Collins of the Brookhaven Police Department and told him that he may be a witness in this lawsuit. The two of them did not discuss Plaintiff's potential employment. Prior to this lawsuit being filed, Defendant received a call from the Brookhaven mayor who asked Defendant if he would rehire Plaintiff. Defendant stated that he would not, but for any other information on Plaintiff, he, the Mayor, would need to call McComb's HR department. After learning of the current lawsuit against him, Defendant called the Mayor of Brookhaven back and confirmed what was said in their first call."

[ECF No. 52-10] at 7. Although the testimonies are in conflict regarding the content of the calls, the Court finds that the information provided is enough to satisfy the first element.

Regardless of the content of the calls, conversations were intentionally and willfully made by the Defendant regarding Plaintiff Carter's potential employment. The Court finds that it is up to the jury to determine, absent evidence to the contrary, what the content of the calls truly was. Therefore, this element is satisfied.

(2) Acts Calculated to Cause Damage

The Court finds that this element also is satisfied. To satisfy this element, there must be "a wrongful act without legal or social justification that [was] certain or substantially certain [to] result in [an] interference with [business relations]". Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 48 (Miss. 1998) (quoting Liston v. Home Ins. Co., 659 F.Supp. 276, 281 (S.D. Miss. 1986)); Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 910 So. 2d 1093, 1099 (Miss. 2005).

Carter alleges that Defendant Cloy intentionally contacted her prospective employers without justification to interfere with her employment opportunities at various police departments. She supports this claim by referencing her clean record prior to Cloy's employment at McComb, her former supervisors' positive evaluations of her performance, and the close proximity between her EEOC charge and subsequent termination. Based on these reasons, Carter contends that Cloy terminated her without legal or social

17

justification to hinder her future employment opportunities.    In
contrast, Cloy asserts he made these calls for reasons detailed in
his interrogatory responses and deposition. These reasons include:
the alleged falsified affidavit; Carter allegedly "turn[ing] and
fac[ing] the wall and star[ing] at the wall when [Cloy] was
speaking to her"; Carter allegedly not using the appropriate avenue
to submit an "accident report"; and her alleged comment to another
Police Department member that Defendant Cloy looked at the "office
manager in a certain way as if it was, you know, a sexual thing".
[ECF No. 52-2] at 15-18, 22-24.

The Court finds that a genuine issue of material fact exists
as it relates to the reason that Cloy called Carter's potential
employers. It is well established that "[a] genuine issue of
material fact exists when the evidence is such that a reasonable
jury could return a verdict for the non-moving party." Gates v.
Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 417
(5th Cir. 2008)(citing Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986). It would be reasonable for a jury, based on the
information Carter provided in support of her retaliation claim,
to find that Carter was terminated for filing the EEOC charge. If
the jury were to find so, the jury could also find that Cloy's
stated reasons for making the calls were merely a cover for his
retaliation and his actions were intended to cause damage to her
reputation. The Court finds that there is conflicting testimony,

and the Court may not weigh the credibility of evidence presented – that is the jury's responsibility and duty. <u>Wells,</u> 885 F.3d 885, 889.; <u>See</u> <u>Dimick v. Schiedt</u>, 293 U.S. 474, 486 (1935) ("trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases.").

Therefore, whether Cloy's stated reasons for making the calls were based on a legal or social justification or were simply an attempt to prevent Carter from being employed by another Police Department, this matter is best left to be decided by a jury. Therefore, this element is satisfied.

(3)  Unlawful Purpose, Without Right or Justifiable Cause

The analysis under this element is the same as analysis set forth above. The Court finds that Plaintiff Carter has established the third element as she has produced enough evidence for a reasonable jury to find that Cloy's actions were done "with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant." <u>MBF Corp. v. Century Bus. Commc'ns, Inc., A Subsidiary of Century Tel. Enters., Inc.,</u> 663 So.2d 595, 598 (Miss. 1995). Because the purpose of the calls and the content within are a genuine issue of material fact, this issue is best left for the jury to decide. Plaintiff Carter has thus satisfied this element.

(4) Actual Damage and Loss

Finally, Plaintiff Carter's claim is satisfied in this capacity as well. Following Carter's termination at the McComb Police Department, she obtained a job in the same field, working for the Brookhaven Police Department in August of 2024 as a patrolman. [ECF No. 52-1] at 65. As of the date of her deposition, June 16, 2025, Carter's testified that she received a decrease in her salary working as a patrolman for Brookhaven Police Department as opposed to working for the McComb Police Department. [ECF No. 52-1] at 65-66. The discrepancy could be a result of Defendant Cloy's actions and communications with Carter's potential employers. This matter is best left for the jury to determine.

For the reasons set forth above, the Court **denies** Defendants' Motion with respect to the intentional interference with business relations claim.

**ACCORDINGLY,**

**IT IS ORDERED** that Defendants City of McComb and former Police Chief Juan Cloy's, in his individual capacity, Motion for Summary Judgment is **DENIED** in part with respect to the retaliation and intentional interference with business relationships claims, and summary judgment is **GRANTED** with respect to the wage discrimination claim.

**SO ORDERED,** this 10th day of October 2025.

/s/ David C. Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE